UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SHAMEEK JACKSON,

                                      Plaintiff,

         -against-

THE CITY OF NEW YORK, DETECTIVE PETER NANGLE, DETECTIVE SEKOU BOURNE, CAPTAIN PATRICK CORTRIGHT, LIEUTENANT PATRICK RYAN, SERGEANT CLAUDIO RAMIREZ, DETECTIVE RAUL MAISONETTE, DETECTIVE VINCENT TIERNAN, POLICE OFFICER ANTONIO SANTANA, LIEUTENANT CHRISTOPHER THOMAS, DETECTIVE DAVE SOLMONSOHN, DETECTIVE RONALD BANNISTER, DETECTIVE ANDREW PRENDERGAST, DETECTIVE JOHN EDGER, DETECTIVE WILLIE JOHNSON, and JOHN/JANE DOE # 11 – 13,

                                       Defendants.
------------------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

13 CV 765 (BMC)

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Shameek Jackson ("Plaintiff" or "Mr. Jackson"), an African-American male, is a resident of the County of Kings, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. Defendant The City of New York operates the New York City Department of Corrections ("NYCDOC"), a department or agency of Defendant The City of New York.

11. The NYCDOC is responsible for the appointment, training, supervision, promotion, and discipline of corrections officers and supervisory corrections officers, including the individually named defendants herein.

12. At all times relevant herein, Defendant Police Officer Peter Nangle ("Nangle") was an officer, employee, and agent of Defendant The City of New York.

13. At all times relevant herein, Defendant Nangle was acting within the scope of his employment with Defendant The City of New York.

14. At all times relevant herein, Defendant Nangle was acting under color of state law.

15. Defendant Nangle is sued in his individual and official capacities.

16. At all times relevant herein, Defendant Detective Sekou Bourne ("Bourne") was an officer, employee, and agent of Defendant The City of New York.

17. At all times relevant herein, Defendant Bourne was acting within the scope of his employment with Defendant The City of New York.

18. At all times relevant herein, Defendant Bourne was acting under color of state law.

19. Defendant Bourne is sued in his individual and official capacities.

20. At all times relevant herein, Defendant Captain Patrick Cortright ("Cortright") was a supervisor, officer, employee, and agent of Defendant The City of New York.

21. At all times relevant herein, Defendant Cortright was acting within the scope of his employment with Defendant The City of New York.

22. At all times relevant herein, Defendant Cortright was acting under color of state law.

23. Defendant Cortright is sued in his individual and official capacities.

24. At all times relevant herein, Defendant Lieutenant Patrick Ryan ("Ryan") was a supervisor, officer, employee, and agent of Defendant The City of New York.

25. At all times relevant herein, Defendant Ryan was acting within the scope of his employment with Defendant The City of New York.

26. At all times relevant herein, Defendant Ryan was acting under color of state law.

27. Defendant Ryan is sued in his individual and official capacities.

28. At all times relevant herein, Defendant Sergeant Claudio Ramirez ("Ramirez") was a supervisor, officer, employee, and agent of Defendant The City of New York.

29. At all times relevant herein, Defendant Ramirez was acting within the scope of his employment with Defendant The City of New York.

30. At all times relevant herein, Defendant Ramirez was acting under color of state law.

31. Defendant Ramirez is sued in his individual and official capacities.

32. At all times relevant herein, Defendant Detective Raul Maisonette ("Maisonette") was an officer, employee, and agent of Defendant The City of New York.

33. At all times relevant herein, Defendant Maisonette was acting within the scope of his employment with Defendant The City of New York.

34. At all times relevant herein, Defendant Maisonette was acting under color of state law.

35. Defendant Maisonette is sued in his individual and official capacities.

36. At all times relevant herein, Defendant Detective Vincent Tiernan ("Tiernan") was an officer, employee, and agent of Defendant The City of New York.

37. At all times relevant herein, Defendant Tiernan was acting within the scope of his employment with Defendant The City of New York.

38. At all times relevant herein, Defendant Tiernan was acting under color of state law.

39. Defendant Tiernan is sued in his individual and official capacities.

40. At all times relevant herein, Defendant Police Officer Antonio Santana ("Santana") was an officer, employee, and agent of Defendant The City of New York.

41. At all times relevant herein, Defendant Santana was acting within the scope of his employment with Defendant The City of New York.

42. At all times relevant herein, Defendant Santana was acting under color of state law.

43. Defendant Santana is sued in his individual and official capacities.

44. At all times relevant herein, Defendant Lieutenant Christopher Thomas ("Thomas") was a supervisor, officer, employee, and agent of Defendant The City of New York.

45. At all times relevant herein, Defendant Thomas was acting within the scope of his employment with Defendant The City of New York.

46. At all times relevant herein, Defendant Thomas was acting under color of state law.

47. Defendant Thomas is sued in his individual and official capacities.

48. At all times relevant herein, Defendant Detective Dave Solmonsohn ("Solmonsohn") was an officer, employee, and agent of Defendant The City of New York.

49. At all times relevant herein, Defendant Solmonsohn was acting within the scope of his employment with Defendant The City of New York.

50. At all times relevant herein, Defendant Solmonsohn was acting under color of state law.

51. Defendant Solmonsohn is sued in his individual and official capacities.

52. At all times relevant herein, Defendant Detective Ronald Bannister ("Bannister") was an officer, employee, and agent of Defendant The City of New York.

53. At all times relevant herein, Defendant Bannister was acting within the scope of his employment with Defendant The City of New York.

54. At all times relevant herein, Defendant Bannister was acting under color of state law.

55. Defendant Bannister is sued in his individual and official capacities.

56. At all times relevant herein, Defendant Detective Andrew Prendergast ("Prendergast") was an officer, employee, and agent of Defendant The City of New York.

57. At all times relevant herein, Defendant Prendergast was acting within the scope of his employment with Defendant The City of New York.

58. At all times relevant herein, Defendant Prendergast was acting under color of state law.

59. Defendant Prendergast is sued in his individual and official capacities.

60. At all times relevant herein, Defendant Detective John Edger ("Edger") was an officer, employee, and agent of Defendant The City of New York.

61. At all times relevant herein, Defendant Edger was acting within the scope of his employment with Defendant The City of New York.

62. At all times relevant herein, Defendant Edger was acting under color of state law.

63. Defendant Edger is sued in his individual and official capacities.

64. At all times relevant herein, Defendant Detective Willie Johnson ("Johnson") was an officer, employee, and agent of Defendant The City of New York.

65. At all times relevant herein, Defendant Johnson was acting within the scope of his employment with Defendant The City of New York.

66. At all times relevant herein, Defendant Johnson was acting under color of state law.

67. Defendant Johnson is sued in his individual and official capacities.

68. At all times relevant herein, Defendants John/Jane Doe # 11 – 13 were supervisors, corrections officers, employees, and/or agents of Defendant The City of New York.

69. At all times relevant herein, Defendants John/Jane Doe # 11 – 13 were acting within the scope of their employment with Defendant The City of New York.

70. At all times relevant herein, Defendants John/Jane Doe # 11 – 13 were acting under color of state law.

71. Defendants John/Jane Doe # 11 – 13 are sued in their individual and official capacities.

72. The names John/Jane Doe # 11 – 13 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

73. On November 19, 2010, Mr. Jackson was lawfully present at his aunt's house located at 395 Vermont Street, Brooklyn, New York ("Subject Location").

74. Mr. Jackson had gone to the Subject Location for his cousin's birthday party. Several people, including family members and minor children, were present at the Subject Location.

75. Mr. Jackson had arrived at the Subject Location at approximately 6:15 p.m.

76.     Prior to and during the time that Mr. Jackson was at the Subject Location, the Subject Location was under surveillance by Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson.

77.     Mr. Jackson entered the Subject Location through its front door.

78.     Upon information and belief, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson observed Mr. Jackson entering the Subject Location.

79.     Upon entering the Subject Location through the front door, there is a living room off to the right and a kitchen to the left.

80.     The kitchen and the living room are separated by a wall.

81.     Inside the living room next to the wall farthest from the kitchen, there is a stereo system.

82.     Upon entering the Subject Location, Mr. Jackson went directly into the kitchen and remained there the entire time he was present in the subject location.

83.     The stereo system inside the living room is approximately thirty-five (35) feet from where Mr. Jackson was standing inside the kitchen.

84.     At 6:20 p.m., five (5) minutes after Mr. Jackson entered the Subject Location, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson executed a search warrant at the Subject Location.

85. Upon entering the Subject Location, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson alleged to have observed Kevin Robertson near the stereo in the living room.

86. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson allege that, upon entering the home, Kevin Robertson pushed heroin off of the stereo system onto the floor behind the stereo system. They also allege that Kevin Robertson threw heroin that was on his person behind the stereo system.

87. At no time did Mr. Jackson enter the living room.

88. The alleged narcotics were not in close proximity to Mr. Jackson.

89. No circumstances within the living room indicated that the room was being used as a drug factory and the alleged narcotics were not in plain view.

90. At the Subject Location, Kevin Robinson told Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson that the alleged heroin belonged to him.

91. All of the adults inside of the home, including Mr. Jackson were arrested.

92. Mr. Jackson's arrest was without probable cause.

93. Mr. Jackson's arrest was approved at the Subject Location by Defendant Cortright and other supervising defendants at the Subject Location.

94. Mr. Jackson was transported to a police precinct.

95. At the precinct, Kevin Robinson continued to tell Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson that the alleged narcotics belonged to him.

96. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson spoke with the Kings County District Attorneys' Office (KCDAO), individually and collectively lying to the KCDAO that Mr. Jackson had violated New York Penal Law §§ 220.16(1), 260.10(1), & 260.20(2).

97. Based on these fabricated allegations, the KCDAO forwarded to Defendant Nangle a Criminal Court Complaint.

98. The Criminal Court Complaint was reviewed and then signed by Defendant Nangle.

99. The Criminal Court Complaint was then forwarded by Defendant Nangle to the KCDAO.

100. At some point, The Office of the Special Narcotics Prosecutor for the City of New York ("OSNPCNY") took over the criminal case from the KCDAO.

101. Legal process was issued against Mr. Jackson, and he was subsequently arraigned.

102. At his arraignment, bail was set at $8,000.00.

103. Mr. Jackson was unable to make the bail, and was transferred to Riker's Island.

104. Upon entering Riker's Island, Mr. Jackson was strip searched by Defendants John/Jane Doe # 11 – 12 under the direction and approval of Defendant John/Jane Doe # 13.

105. Mr. Jackson had no contraband on his person, and Mr. Jackson had done nothing to give Defendants John/Jane Doe # 11 – 13 reasonable suspicion or probable cause to conduct the strip search.

106. Mr. Jackson was held at Riker's Island for approximately two weeks until he was brought before a Grand Jury.

107. During the two weeks while Mr. Jackson was being held at Riker's Island, Kevin Robinson continued to tell Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson, as well as prosecutors with the OSNPCNY that the alleged narcotics belonged to him.

108. During the two weeks while Mr. Jackson was being held at Riker's Island, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson forwarded, or caused to be forwarded, false evidence to the OSNPCNY, *inter alia*, arrest reports, complaint reports, and property vouchers.

109. At the Grand Jury hearing, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson gave false testimony, *inter alia*, alleging that had violated New York Penal Law §§ 220.16(1), 260.10(1), & 260.20(2).

110. The Grand Jury did not indict Mr. Jackson and the charges against him were dismissed and sealed.

111. Plaintiff suffered damage as a result of Defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to his reputations.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

112. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

113. Defendants, by their conduct toward Plaintiff as alleged herein, violated Plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

114. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

115. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

116. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion.

117. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### THIRD CAUSE OF ACTION
*False Arrest*

118. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

119. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

120.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
### *Denial of Substantive Due Process*

121.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

122.    Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson created false evidence against Plaintiff.

123.    Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson forwarded false evidence to prosecutors in the KCDAO and the OSNPCNY.

124.    In creating false evidence against Plaintiff, and in forwarding false evidence to prosecutors, Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson violated Plaintiff's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

125.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
### *Malicious Abuse of Process*

126.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

127. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson issued and/or caused to be issued legal process to place Plaintiff under arrest.

128. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson arrested Plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of him.

129. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the KCDAO and the OSNPCNY and continuing to participate in the prosecution of the Plaintiff.

130. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson acted with intent to do harm to Plaintiff without excuse or justification.

131. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
*Malicious Prosecution*

132. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

133. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson initiated the criminal proceedings against Plaintiff by issuing and/or causing to be issued legal process against Plaintiff.

134. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson lacked probable cause to commence the criminal proceedings against Plaintiff.

135. Defendants Nangle, Bourne, Cortright, Ryan, Ramirez, Maisonette, Tiernan, Santana, Thomas, Solmonsohn, Bannister, Prendergast, Edger, and Johnson's actions were motivated by actual malice.

136. The criminal proceeding against Plaintiff was terminated in Plaintiff's favor.

137. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

**SEVENTH CAUSE OF ACTION**
*Failure to Intervene*

138. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

139. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

140. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

141. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

**EIGHTH CAUSE OF ACTION**
*Conspiracy under 42 U.S.C. § 1983*

142. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

143. The Defendants jointly participated in the deprivation of Plaintiff's constitutional rights as set forth herein.

144. The Defendants conspired amongst themselves and with members of the KCDAO and the OSNPCNY in the deprivation of Plaintiff's constitutional rights by collectively lying about Plaintiff's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

145. As a result of the Defendants' malicious efforts to damage Plaintiff, Plaintiff's liberty was restricted, he was restrained, subjected to handcuffing, and, among other things, falsely arrested and prosecuted.

146. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### NINTH CAUSE OF ACTION
*Monell*

147. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

148. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Plaintiff.

149. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

150. Defendant The City of New York, through the NYPD, has had, and still has, search warrant execution practices which lead to all of the adults within a home being arrested,

despite their lack of proximity, constructive possession, or actual possession of any alleged contraband.

151. This is not an isolated incident, and this practice of arresting every adult within a home after the execution of a search warrant was evident during, among other occurrences, the November 19, 2010, search warrant execution at 395 Vermont Street, Brooklyn, New York; the May 4, 2012, search warrant execution at 300 East 138th Street, Apartment 9C, Bronx, New York; and the December 15, 2010, search warrant execution at 1348 Webster Avenue, Apartment 7G, Bronx, New York for which a lawsuit was filed in the United Stated District Court, Southern District of New York under Index Number 12 Civ. 5289 (PAC).

152. Defendant The City of New York is aware of these practices, having launched internal investigations into the matter, but has failed to discontinue the practice of arresting every adult inside a home after alleged contraband is found despite said adults not being in proximity, constructive possession, or actual possession of the alleged contraband.

153. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

154. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

155. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

156. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

157. Active officers are given promotion opportunities that are not afforded to inactive officers.

158. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

159. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are note.

160. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

161. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to properly counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

162. The failure of Defendant The City of New York to, inter alia, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

163. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

164. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

165. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

166. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

167. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

168. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

169. Defendant The City of New York, through the NYCDOC, has had, and still has, hiring practices that it knows will lead to the hiring of corrections officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

170. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

171. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

172. These policies, practices, and customs were the moving force behind Plaintiff's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 31, 2013

/s/
Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY  10001
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com